Good morning. Jack Reisner appearing on behalf of the Pennington class, and if I may, I'd like to address the claim regarding Scano's liability, and then Mr. Urkel will address Fluor's duty to provide a timely warrant notice. Can you talk a little louder? Maybe. Okay, thanks. Certainly. Is this better, Judge? Yes. Thank you. And Mr. Urkel will address Fluor's duty to provide a timely warrant notice, and we have requested five minutes for rebuttal. May it please the Court, the issue on appeal is what standard should be applied when determining who is the statutory warrant employer in the case of a plant closing where there are several employers at the site. Should it be the direct liability principle based on which employer's actions caused the violation of the WARN Act, or should it be the integration principle, which looks at whether the employers, when they were operating, were doing so as one company? Under the WARN Act, there is an appropriate setting for each of these rules, so the facts matter, and the facts here dictate that the direct liability rule as framed by this Court in Johnson v. Flowers applies, for it tells us that the statutory employer is the one that controlled the employment practice that violated the employee's rights. This principle was essentially incorporated a year after the decision was issued into the WARN Act, and its regulation tells us that this rule specifically applies to contracting companies and their independent contractors, which the appellees were here. And so I think the facts are important, and I would like to summarize them. Well, I think you start off with a very provocative statement of what you think the principles are. It seems to me the WARN Act imposes a duty on an employer to give notice to its employees, and the question is whether the employees of contractors and subcontractors also are employees of the owner. And the Department of Labor has given circumstances where you do go across the corporate form those factors, so as to make employees of the subcontractor or the contractor de facto employees of the owner. But I don't think you can state it so broadly as somebody who caused a shutdown has to give notice to all the employees at the site. I mean, that's not even the criterion, is an employer has to give notice to his employees, and that's the general rule. And so the question you have to demonstrate is whether employees of other companies are de facto employees of SCANA, in this case. And I think the Department of Labor has focused on its factors, which the fact that SCANA closed down the whole site means that every single employer at the site who was caused to lose a job has to notify every employee. It's just way beyond the statute, way beyond the regulations. You have to start with employer-employee relationship. That's the statutory relationship where a WARN notice has to be given. And to get beyond the employees of that company, you have to have de facto employees, some kind of corporate bail breaking through the factors of the Department of Labor have done. And I think it would be more helpful if you stick with that structure than some notion of, I'm not sure what it was with anybody who closes down the site has to take care of every employee in the site. Your Honor, the starting point is absolutely correct that the WARN Act does look at the talks about one employer giving down notice to its employees when it closes its business. And so it's not geographical, it's a relationship. And I know you're brief and your argument tends to make it geographical. They're all at the same site, therefore you have to give them notice. That's just not supported by anything in the statute or the regulations. Your Honor, the WARN Act requires that an employer shall not order a plant closing without the requisite notice. And at section 2101A2, it defines a plant closing as a shutdown, which results in an employment loss at the single site of employment for which there must be 50 or more people. So the WARN Act is very site-specific. It's site-specific, but it's also specific to employer-employee. Employer-employee is the starting point. We know what that is generally. So the question is, if the employer has its own subsidiaries performing it, then it's in real danger of having to give notice not only to its own employees, but its subsidiaries' employees because of the various factors. Here we have owner, contractor, Westinghouse, and subcontractor floor. And so the case you have to make is why does SCANA have to give notice to Westinghouse employees and floor employees? And to get to that point, it seems to me you have to follow the Department of Labor's criteria, right? Yes. And the criteria includes independent contractors and contracting companies specifically. And so long as they break, contribute to the notion that the employees are de facto employees of SCANA. Correct. And your honor mentioned the piercing of the corporate veil principle, which is important. Well, it's not. That's the common law. The Department of Labor has its own, which are more adapted to the WARN Act. Yes. And that's Johnson v. Flowers. This court's flowers, it adapted in which the principle, whether you call it common law, you call it federal common law, it is the WARN law. And it incorporates the idea that the employer that orders the specific violation is the responsible employer. And your honor's concern about this principle spreading to any and all situations of a plant closing is understandable. But the what has to be in place for it to apply in the first place that often is the iceberg that's beneath the waters that most observers do not pick up, which is that in order to be in the place that SCANA was vis-a-vis these independent contractors, they had to be on that site, living on that site and with facilities on that site for the long term in such numbers that we're talking about only the largest employers in America, over 100 employees, which excludes every other garden variety, plain vanilla. Does SCANA even know who the FLOOR employees are? Excuse me? Does SCANA even know who the FLOOR employees are? They don't have to know. They have to know where FLOOR's CEO is. And to have told the CEO, we are going to be shutting down in 60 days, whenever it was, that would have changed the whole complex. SCANA does not have to deliver its notices to the FLOOR employees. It has to tell FLOOR we are shutting down and that immediately shifts the burden to FLOOR as the independent employer who has the capacity to make a decision to give its own employees a notice. And that takes SCANA totally off the hook. And that's what happens in business. That's what the record says here. FLOOR never saw anything like this. There's going to be a meet and confer. There's going to be a consultation to which FLOOR has the independent duty to give its notice. Had that happened, we would not be here. It didn't happen in any extraordinary pace. Sorry. One thing that Judge Niemeyer mentioned was the DOL regs, which other courts have followed and seem to be highly pertinent. And they have a list of five factors. And you were very selective about that. And you've emphasized factor number three, which was de facto exercise of de facto control. But unfortunately for you, it's only one of the five factors. And the other ones, which were common ownership and common directors and offices and supervision and who paid and who fired and who trained, all of those cut against you. And even on the one factor that you thought cut in your favor seemed to me to be directed at a parent-subsidiary relationship, which is what you have is taking these DOL regulations, applying all five of the factors as the district court did. And I just don't see how you prevail on those kind of things without expanding the scope of this statute to quite an extraordinary extent. And the DOL regulations are controlling here and they cut against you. And the one that is even arguable cuts against you. How do you overcome all that? Two things, Your Honor. First, the DOL does not say all factors have to be considered or even met. These are non-exclusive. However, the DOL added the direct control factor with the WARN Act, unlike every other statute, because a year before Johnson v. Flowers identified the direct liability rule, which is pertinent to a plant closing like this. And so the third circuit has recognized, as have other courts, that the de facto control is unlike other factors. It is preeminent. If there is clear evidence that one decision has been made that has been applied to whether it's a subsidiary or the contractor, that decision controls and there need not be any other factors shown. There is overwhelming domination by... The direct control rule is when a parent is directing the operations of a subsidiary and you don't have that. The direct control rule did not purport to sweep in every subcontractor and every independent contractor. It might have some connection to a work site. The direct control in the decision to shut down was scan a telling floor, get yourselves off this site, shut down your facilities. You must do that now. That is direct total domination and control over these contractors with respect to the very thing that Warren wants, which is to see 60 days notice before that happens and caused a primary phase for violation for floor and Westinghouse, for which they have sought affirmative defenses. I thought you were complaining about the fact that SCANA did not give notice to the employees, not to the companies. It's the same thing when they are giving... The duty is imposed on the employer to give notice to its employees of 60 days notice or to pay them during that time, but that's an employer employee duty. The fact that a floor is on there with 4,000 employees, you're suggesting SCANA has to give notice to floor's 4,000 employees. Not if we consider the dimension that the single employer rule presents in the act, which is that the independence is the issue that we look at and in their briefs, because it undermines their case completely, and which the court did not focus on. This idea of independence is the critical rule, which the fact that are there to help us consider. The independence would have been provided by SCANA to floor, but they told floor we are shutting down, which shifts the Warren burden to the direct employer in that case. In this extraordinary circumstance... Thank you, Mr. Reisner. Your time has expired, but you do have some rebuttal time, and we will look forward to hearing from you then. Thank you. I'd like to ask Mr. Urkel, if I may, to complete the plaintiff's case. Okay. Is it Mr. Urkel? Please proceed. May it please the court. My name is Charles Urkel. We have appealed the district court's grant of summary judgment to floor on multiple grounds. Initially, the court should reject floor's contention that it's not liable as a matter of law. Even if it was entitled to the UBC defense, before it can invoke that, it must give as much notice as is practicable. Even if that means giving it on the last day for the day of the shutdown. If you take floor's argument at face value that they didn't find out until July 31, 2000... I realize this is on summary judgment, but at the same time, Judge Childs was very familiar with the record here, and she did indicate that they had given notice as soon as practical by mailing Warren notices within a few days, and that before the closure, they were in the dark that, as is often the case, Skarna didn't want floor or other independent contractors with whom it was dealing to know all the ins and outs of its financial situation. We have what seemed to be a pretty well-reasoned district court opinion in the case, which I recognized was in summary judgment, but on the other hand, Judge Childs has lived with this case and with this record for a long time. Well, her opinion focused significantly on the unforeseeable business circumstances defense as it pertains to floor, but when she said that the notices went out in a few days, by August 4th, that was incorrect. In floor's own motion for summary judgment and in Ms. Carty's... I thought it was August 8th. No, well... Didn't they mail them out on August 8th? They said between 8 and 10, they went out in batches by first-class mail. Yes, that means people didn't get them until the 10th, 11th, or 12th, and then they acknowledged seven days later on the 16th, they sent a second notice to the Kraft employees, the 3,000 Kraft employees, because there had not been contact information and a name in the earlier notice. They said, thank you for your patience, thereby acknowledging that the earlier notices were not effective. We still don't understand why they didn't send them out the same time they sent the government notice. It's a one-page notice. It was sent out on August... They had to get together. They had to get the information together and prepare the letters and stuff them in envelopes, but they also needed information. Didn't they have to collect that? They had everybody's email address on July 31st. These employees almost all had Westinghouse and Florida email addresses because they had worked for both entities. They all had email addresses, which is exactly how they sent it to the state and local officials, so it's curious as to why they didn't give it out to people as they were walking off the site. They instead gave this thing called a FAQ, which is clearly not suffice for a warrant notice. All right. Thank you, Mr. Ercole. We appreciate that. All right. Is it Mr. Tye or Mr. Speth? It's going to be Mr. Speth, Your Honor. Mr. Speth, excuse me. I mispronounced your name. All right. Please proceed. May it please the court. I'm Ted Speth. I represent SCANA and SCE&G. I'll address during my allotted time the relationship between SCANA and Fleur and SCANA and Westinghouse as it relates to the issues in this case. Mr. Tye will follow me and he will address two issues. One, a waiver issue, which now exists in this case, and secondly, the timeliness and the appropriateness of warrants notice to all the employees it chose to lay off. Appellants are asking this court to abandon the single employer analysis as established by the plain language of the Warrant Act, the Department of Labor regulations under that act, the case law over the last past two decades. Instead, they urge this court to adopt a new analysis that has not been applied in any setting by any court under Warren or any other employment statute. To sum up what Judge Childs did, she used the traditional approach of looking at the five Department of Labor factors. She looked at the cases that have been decided over the last 20 years, particularly post-Pearson out of the Third Circuit in 2001, and she construed all five factors, looking at them independently and reached the conclusion that the appellants had not shown a single employer relationship, failing to show one single factor in there on favor. Now, appellants, instead of relying on this traditional single employer warrant analysis used by Judge Childs in courts over the last 20 years, have pivoted, and now they proffer two never-used theories in an attempt to claim was a single employer with Flora and Westinghouse. Both theories are predicated on the decision-maker direct liability analysis. Although this analysis has been recognized and used by courts in other settings, it has never been used in the manner now requested by the appellants. The appellant's first theory is that the DOL single employer test is really a one-factor test, not a five-factor test as promulgated by the Department of Labor and used by Judge Childs and other courts. According to appellants, the only factor that needs to be established to have a single employer relationship is that of de facto control, and only, essentially, it ignores the other four factors as courts have analyzed over the decades. Appellants then assert that the unlawful decision was Scanna's decision to close the construction site, and that act alone satisfies de facto control, thereby making Scanna a single employer with Flora and Westinghouse, according to the appellants. Now, their second theory is similar to their first, but they abandon the application of DOL factors altogether. Appellants urge this court to recognize the decision-maker direct analysis as a standalone test for a single employer relationship, thereby ignoring the DOL factors altogether. Now, the pertinent facts of this are as follows. Involved are three Fortune 500 companies that have vastly different business pursuits from one another, operated completely independent of each other, and whose only contact was vis-a-vis arms-length business dealers related to the V.C. Summers construction project. It's admitted that Scanna made the decision to cancel the project effective July 31, 2017. Upon that decision being made, each of these three Fortune 500 companies, independently of each other, decided, first, which employees they were going to retain, second, which employees they were going to lay off, and third, what their respective obligations were underworn regarding their employees. For instance, Scanna. Scanna made the decision that it would continue the employment of the 617 Scanna employees it was going to lay off for 60 days after notifying these employees of their layoff on July 31, 2017. Flora and Westinghouse, on the other hand, completely independent of each other and Scanna, made independent decisions as to what their obligations were underworn regarding or relative to the employees they had selected for layoff. In short, Scanna was responsible for its employees, Westinghouse was responsible for its employees, and Flora its employees, just like this project had proceeded from the beginning. The fallacy of appellant's theory is threefold. First, the DOL regulation set out a five-factor test, not a one-factor test. Second, the decision maker rule has never been applied to impose liability in any relationship that was not a parent-subsidiary or, in rare cases, a lender-borrower when that relationship actually morphed into what appeared to be more like a parent-subsidiary relationship. This was Judge Child's conclusion in her order, simply that an arm's-length business relationship does not establish de facto control. Appellant's third fallacy is what constitutes potentially unlawful conduct under Warren. The potentially unlawful decision under Warren is the decision not to provide 60 days advanced notice to those employees selected to be laid off, not the decision to cancel a project as by the appellants in this case, that SCANA should or even could have notified them 60 days before they're being laid off by Flora and Westinghouse, which makes sense given they had no employment relationship with SCANA whatsoever. Now, I want to address two cases that the parties rely upon fairly heavily in their briefs. First is Pearson versus General Electric, and I mentioned it earlier, it's a 2003, or 2001, excuse me, Third Circuit opinion. And since that decision, it has been recognized virtually universally by courts to be the sentinel employment, a single employer decision under the Warren Act. The Pearson court addressed two issues. The first issue, what test should be applied under Warren to determine if there's a single employer relationship? The second issue, when or even if two corporations that are not a parent-subsidiary can be held to be a single employer? Now, there are three takeaways from the Pearson court's decision that are applicable to this case. Number one, the five-factor test of the Department of Labor is to be applied in a single employer Warren case. Two, it is very difficult if not impossible to establish a single employer relationship without ownership interest. And three, de facto control is one factor to be considered out of five. In fact, according to the Pearson court, de facto control was to be used, and I quote, to tip the balance in an otherwise closed case, end of quote, and that quote can be found on page 490 of the Pearson decision. The appellant's position is in opposite of each of these three holdings by Pearson. Now, the appellants in their brief rely on the Administaff case, which is a 2003 decision from the Fifth Circuit Court of Appeals. In Administaff, TCS was the direct employer of the employees in question. TCS owned the plant where the employees were. TCS operated the plant where the employees were. TCS made the decision to close the plant. TCS decided to lay off the employees. Most importantly, TCS decided not to give the employees it chose to lay off advance notices required by Warren. Now, Administaff was merely and had an arm's length business relationship with TCS to provide certain services at the plant. It was not involved in any decisions related to the closing or any of the decisions relating to the layoff, including the decision not to provide Warren notice. The Fifth Circuit, using the five factor analysis, just as Pearson set out, found, just like Judge Childs found, when you have a completely arm's length business relationship, that none of the factors were in favor of a single employer relationship. To the extent that Administaff applies to our case, it supports SCANA, not appellants. In closing, the traditional five factor Department of Labor analysis is an appropriate test for this court to apply, just as Judge Childs did and other courts have done for decades. Under that analysis, appellants cannot establish that SCANA was a single employer with either floor or Westinghouse. Recognizing this truism, appellants instead asked this court to create an entirely new test, which is contrary to the Department of Labor regulations and the entire body of controlling case law. This court, just as Judge Childs did, should deny this request. I appreciate your time and I'm glad to answer any questions the court may have. Thank you, Mr. Spaeth. Judge Niemeyer, do you have any questions? No, that's fine, thank you. Judge Motz? No. All right, thank you, sir. Mr. Tye? May it please the court, my name is Haygood Tye and I'm with Fisher Phillips and we represent the Fleur appellees. In the lower court, Fleur moved for summary judgment on two separate and independent grounds that are relevant to this appeal and on both of those, Judge Childs granted summary judgment. Fleur asked this court to affirm for two reasons. The first, which I refer to as the waiver reason, relates to the fact that the appellants waived the first ground on which Judge Childs granted summary judgment. And the second reason is what we refer to as the competent evidence reason and that relates to Judge Childs ruling on the unforeseeable business circumstance defense, which we refer to as the UBC defense. If this court agrees on either ground, then Fleur's dismissal should be affirmed. With respect to the first reason, the waiver reason, Judge Childs ruled in the lower court that the appellants had waived an issue and the issue was Fleur moved for summary judgment on the grounds that the statute says that only an employer who orders a closure should be held liable. In response to that, the appellants provided no response to that at all in the lower court and as a result, Judge Childs found that they had waived that argument. She then went on to grant summary judgment to Fleur on the merits of that 26 that they probably chose not to challenge that because if they had challenged it, it would have required them to take positions that were inconsistent with other legal theories that they were pursuing at the time. Now when we move to this court, the appellants waived this issue again. They did not include this on their statement of issues on appeal. They also did not address this in their opening brief to this court and under the well-established case law of this circuit, if an appellant fails to follow the federal rules of procedure and preserve the issue, then the issue is considered to be abandoned and that's true even when, as it has occurred in this case, that the appellants addressed the waiver issue for the first time in their reply brief. So because the appellants have waived this issue twice, once in the lower court and the second time in this court, Fleur respectfully requests that its dismissal be affirmed. Now because these are alternative grounds, Fleur's position is that because of the waiver issue, they may not even need to rely on their UBC defense, but I would like to address that as well in response to Mr. Urkel. With respect to the second reason, and this relates to the UBC defense, the appellants have been unable to point to any competent evidence and that's why we call this the no competent evidence reason. They're not able to demonstrate a genuine issue of material fact to justify overturning Judge Child's ruling that the notice was issued as soon as practicing Fleur's 4,000 employees. Now the appellants did not appeal that it was unforeseeable to Fleur, so the only issue related to this defense is whether or not the notice was issued as soon as practicable. Everybody agrees that, and the appellants concede, that Fleur did not learn of closing until July the 31st, so they couldn't have given one day's notice or 60 days' advance notice. Instead, they respond and make what I would characterize as two unsupported compliance arguments, one with regard to the timing and the other related to the content. If we look at the advance notice, the idea being that employees should be given time to prepare for a layoff, that they should be given notice ahead so that they can get retraining, look for another job, things of that nature. The statute itself does not contemplate and in fact doesn't even mention after the fact notice, but when an employee receives after the fact notice, they already have, as they did in this case, the most important information, which is that their site is closing and that their jobs are being lost. So with the spirit of the Warren Act in mind, the appellant's argument seems overly technical and, as I'll explain, is not supported by record evidence. In the lower court, at the summary judgment phase, the appellants did comment that Fleur could have issued its after the fact warrant notice sooner, but they offered Judge Childs no facts at all to support that statement. It was a one-sentence, one-line statement in their brief. In this court, they argued that because Fleur is a big company, that perhaps it could have or should have or might have done something faster. But conclusory allegations of this type are not competent evidence and we have not heard the appellant's point to any evidence to suggest that Fleur could have issued the notice a day sooner, two days sooner, or even an hour sooner. And that's because the only competent evidence, the only evidence in the record at all regarding Fleur's effort to get the notice out as soon as practicable, is found in the, excuse me, in the declarations of Ellen Carty, who was the director of HR on the site, and Michael Philpott, who was the manager of human resources on the site. And the appellants did take a 30 v 6 deposition of Michael Philpott on the topic of warrant notice and they elicited no testimony at all to suggest that Fleur had done anything other than issue the notice as soon as practicable. So there's no evidence in the record that Fleur was negligent or intentional in any sort of delay at all. Instead, the record demonstrates that this was a very chaotic time, a very disruptive time. The human resources department was escorted off the site with everybody else, had to go the next day and set up temporary HR offices with loaner laptops and things of that nature because they were not allowed to go back on site and retrieve their information, their computers. And despite all of these challenges, within a matter of three or four business days, Fleur's HR department still got these enormous warrant packages put together and provided to their third-party vendor. And the vendor then took and printed and stuffed and mailed those within two business days after that. Now, the appellant's speculation seems to suggest that they think Fleur should have issued the notice as soon as practicable. And Fleur has carried its burden that it did do that, that it did issue the notice as soon as practicable, and the appellants have failed to produce confident evidence to the contrary. Now, the appellants have tried to raise a compliance issue over the lack of an additional telephone number in Fleur's notice packet. Respectfully, Fleur does not believe there's any violation there at all. The cover letter to the warrant package included Ellen Carty's personal email address. The appellants contend that a phone number should have been included, but they seem to disregard the fact that the package had many telephone numbers, including, and I'm holding up JA4226, which is a page that was in the warrant package that includes 10 different telephone numbers that employees could call to get more information. And those were not the only telephone numbers in the package. There were other telephone numbers to call about unemployment or to get a hold of the company's employee assistance hotline and things of that nature. So there were certainly plenty of telephone numbers, and clearly Fleur complied with the regulations. But even under the appellant's theory that Fleur did not, the regulations specifically say that these types of inadvertent errors, which we don't believe it was, but even if the court should determine that, the regulations say that those were not intended to be violations of warrant. So in conclusion, having waived the first ground on which Judge Childs granted summary judgment twice, we would ask that the court affirm on that basis. Alternatively, we would ask the court to affirm that Judge Childs was correct in her order that Fleur issued the notice as soon as practicable. And if the court upholds based on either of these reasons, then we would request respectfully that the court affirm summary judgment. I'd be happy to answer any questions that the court may have, and I appreciate you considering Fleur's argument. Thank you very much, Mr. Tye. We appreciate that. If there are no further questions of you, I think Mr. Reisner is on now for rebuttal time. Is that correct? Yes, Your Honor. All right. Please proceed, Mr. Reisner. Thank you, Your Honor. The appellee's position fails for three very important reasons. The least of which is that contrary to what's represented, we have not abandoned the other issues, the integration issues, as we addressed them in our briefs. The integration at the site was extraordinary. One hand could not do work without the other hand. It needed three hands to do the work. It needed a brain, it needed muscles, and it needed someone who's going to with discipline and make sure that it's going to be done right. Those Westinghouse, Fleur, and Skanner respectively. So if there was ever a case where there was a meshing and integration necessary to do work, this site is the exemplar. Second, Your Honor, the idea that we should use five factors as a checkbox list, a tic-tac-toe board, was decried by several courts, including first this court in Johnson v. Flowers with Judge Wilkinson's decision, which said in the footnote, we will not apply that kind of a test to determine who is the statutory employer under the Age who controlled the employment decisions. The decisions are the key to what's being looked at. Other courts have followed that, the Fifth Circuit, the Second Circuit, the Seventh Circuit. Three circuits have interpreted the Warren Act's five factors as telling them that they should use the de facto control factor to determine who made the Warren Act decision and whether that decision usurped any other decision-making from any other employer on the scene. In each of those three cases, the Fifth Circuit in Edmundestaff, the Second Circuit in Japone, recognized, and as did the Pearson courts, recognized that when you have a decision made about the one decision which precludes any other decision-making by the immediate employer, then that decision-maker rule points to liability, as explained in Johnson v. Flowers and in the Huco case, which follows. In this case, SCANA elected to continue to pay its employees, didn't it? Precisely. Could SCANA tell Floor to continue paying its employees? No, it couldn't. It had to take Floor's employees as they came, as Warren plaintiffs. That sort of indicates a lack of control altogether because if it controlled the employees, it could say, okay, you're continuing to stay on. And our policy is that everybody on this site will stay on and get paid. But Floor made a different decision because it controlled the employees, its own, and decided that it would not go that way. Actually, it decided it would be a hybrid, didn't it? Your Honor, I'm not sure what they decided, but I'm not- Well, they decided the record shows. They could retain some people and they let some people go and that type of thing. Warren's control, Your Honor, is looking at the scene 60 days before and up to the layoff. At that point, SCANA could have controlled Floor. If it had come to Floor as what normally would happen and said, we are planning- SCANA decided it was not needed to provide notice by retaining the employees for 60 days. They paid their own employees. I know, but your question, Your Honor, was a good one. If the Floor employees were under the de facto control of SCANA, then SCANA's ruling should have applied to them also. SCANA should have broached the subject with Floor at some point before determining that- This is not an inter-corporate question. This is a question of whether Floor's employees are under the control of SCANA. And you said they are. And I'm suggesting if they were under the control of SCANA, SCANA would have been entitled to decide that the employees keep working. After they shut down the site and sent the employees to their fate, SCANA couldn't do anything with respect to Floor. Mr. Reisner, I have no problem with the de facto control test because it's one of the factors in the DOL. And we did say that in Wisconsin. But the problem I have is I don't see that there's a de facto control exercise here. It's not a subsidiary. Right after this contract ended, Floor went on and took on some independent number of independent projects. And in terms of the- there's no common directors or offices. And in terms of the employees themselves, they weren't paid by SCANA. They weren't supervised. They weren't trained. They weren't hired. They weren't fired. So I don't have any problem with your- the test and Johnson v. Flowers. It's just that I don't see the de facto control here. And I just don't believe that the DOL regulations or anything wants to sweep every independent contractor, every soap contractor, or every business entity that has some connection with a construction site under this Warren Act. The simplest way to do it is to have the employer who employs the actual employees give its employees the warrant notice. And that is just simply to have SCANA give its employees the warrant notice and Floor give its employees the warrant notice. And the same with WEC. And that seems to me to avoid the sort of endless confusion that would result when there's- people throw up their hands and say, oh, well, this is- it's not clear whether we're a single employer or not. If you have a rule that's easy to follow, which is tell your own employees 60 days before you're going to close the plant. That's something everybody knows how to do without scrambling it all into this complex equation of when is somebody a single employer and when is it not? And we'd be off on our own path this way, too, because I don't think most courts have headed in that direction. That's a problem that I have is we're trading a certain degree of understandability and comprehensiveness and simplicity for something that's very complicated. Your Honor, it shouldn't be complicated, but SCANA caused a problem in letting Floor decide whether to give 60 days notice to its people. It didn't allow it to do that. It precluded that by keeping its plant secret. If Your Honor is correct, 60 days before, SCANA told Floor, we're going to shut down. What does that mean? We each have to give our employees a warrant notice. But SCANA purposefully precluded that by making the shutdown announcement as it was happening so that Floor could not give 60 days notice. And that is the problem with the analogy that you've made is that Floor can't, nor should it necessarily, have to give 60 days paid leave because it didn't make the violative decision of closing down that plant. SCANA did and SCANA knew and it looked into this and said, do we have to give our contractors their notice? And they came out with it wrong. They put the employees in a free fall and they should have given Floor the ability to give 60 days notice. Absolutely. And that's plain as day in this case, which is why this is a textbook for what a SCANA should do. It should, if it is planning to close down, give notice to contractors. The whole argument seems to suggest that SCANA had a duty to Floor to enable it to give notice. And the Warrant Act, your argument, I thought under the Warrant Act, was that SCANA had to give notice to Floor's employees. In other words, Floor's employees are de facto employees of SCANA. Therefore, SCANA has to give them notice. That's your argument. The argument is, of course, by giving the employees notes, fine, if they give it to Floor, what that accomplishes is that SCANA has done its duty. And now, of course, the employees are going to get notice from their proper employer. Yes, so SCANA owed the employees the duty, the obligation to get notice. You might have to rewrite the legislation to include that, because the legislation and the DOL regs are written in terms of employer and employees in that relationship. Three circuits have understood that the language is referring to the decision maker making it possible for the employees to get notice. If you allow that to happen, then it will be liable, which is what happened here. Counsel, we've given you some extra time here, and I think we understand your view. Thank you very much. Now, Mr. Cole, do you have some rebuttal time? I think you have one minute. Yes, thank you, Your Honor. I'm just going to quickly address two issues. The waiver issue, we clearly don't believe that we waived anything below. The court didn't think we did. If you read our opposition on page 23 to 25, in opposition to the motion for summary judgment, where we tie it to referring to where an owner makes a decision to shut down a property, and the management company was found or could be found independently liable because they said there were ways they could have covered for themselves. So they were a warrant employer in an independent situation. Floor even replied to that in their reply brief, and Judge Childs ruled on it or in her decision. As far as on appeal, it was on pages 28 and 50 of our appellate brief, where we talked about floors of prima facie liability. And on 23 and 24 of our reply brief, we cited Local 217, prohibiting contracting parties from colluding to avoid warrant liability based on who ordered the shutdown. That was specifically in our papers at this level. So we don't believe we waived it. As far as the shutdown facts that Mr. Tai referenced, this is summary judgment. All inferences should be in our favor as the non-moving party. There was very little evidence put in about the process. There's no explanation as to why the notice that was given to the state, a single-page notice, and the notice that was given to the FDI employees 10 days later, again, why it took that long is one question, but why the three of them had Ms. Carty's name and phone number in it, whereas the one that was going to the 3,000 blue-collar Kraft employees didn't have it in. So there's no explanation about that. There's no explanation or no evidence other than Ms. Carty's certification. From all the witnesses that testified before, nobody explained the delays in getting the notice together. Nobody testified that they gave out any of the FAQs. There were several employee witnesses who said we never got the FAQ on the first day. All right. Thank you, sir. Thank you. We appreciate it. All right. Has everyone concluded their arguments? We would like to thank all of you for coming, and we appreciate your arguments and what's a very interesting case. And I hope you all have a nice afternoon. Thank you, Your Honor. We will. Thank you, Your Honor. This honorable court stands adjourned. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Diana Gribbon Motz